ARTHUR JAMES et al., Respondents, v. CROWN CE-
REAL COMPANY, Appellant.

**St. Louis Court of Appeals, November 19, 1901.**

1. **Contract, interpretation of.** The only reasonable interpretation
   of the contract, in the case at bar, is that the defendant was
   bound to get the hominy to port in time for it to be shipped
   from there during the month of April, otherwise one clause of the
   contract would be nullified by the other.

2. ———: FORWARDING AGENT, WHO IS. The forwarding agent,
   in the case at bar, must be construed to mean an agent at the port
   of shipment, and it was necessary, under the terms of the contract,
   to have the merchandise in his hands in time for him to get it
   aboard some vessel sailing in April.

3. ———: JUSTICES' COURTS: JURISDICTION OF. Justices of
   the peace in St. Louis have jurisdiction over controversies of
   the kind of case at bar, when the amount involved, exclusive of
   interest and costs, does not exceed five hundred dollars, and while
   the judgment was slightly in excess of that sum on account of
   including interest from the date of the demand, this did not take
   the case out of justices' jurisdiction.

Appeal from St. Louis City Circuit Court.—*Daniel D.
Fisher,* Judge.

AFFIRMED.

*J. F. & R. H. Merryman* for appellant.

(1) Our contention in this case is that the court erred
when it held that the respondents had the right, on April
20, 1898, under the terms of the contract, to accept twenty
tons of hominy feed and to reject one hundred tons, tendered
on the same day by appellant. The court at first refused to
admit the evidence of Hopkins, the agent of the Vandalia

road and of the British Channel line of merchant sailing vessels, but later it corrected its rulings, Hopkins testifying that he was the agent of the steamship company and that he issued through bills of lading for one hundred tons of the hominy feed which safely reached the other side, the respondents acknowledging they received it. Benjamin on Sales (6 Am. Ed.), page 154, section 181, says: "It is well setted that the delivery of goods to a common carrier a *fortiori*, to one specially designated by the purchaser, for conveyance to him or to a place designated by him, constitutes an actual receipt by the purchaser. In such case the carrier is, in contemplation of law, the bailee of the person to whom, not by whom, the goods are sent, the latter in employing the carrier being considered as an agent of the former for that purpose. Again in section 693, page 668, the eminent author again says: "Where the vendor is bound to send the goods to the purchaser, the rule is well established, as shown ante section 181, that delivery to a common carrier, a *fortiori*, to one especially designated by the purchaser, is a delivery to the purchaser himself; the carrier being in contemplation of law in such cases the bailee of the person to whom, not by whom, the goods are sent; the latter when employing the carrier being regarded as the agent of the former for that purpose." This principle has been approved by our Supreme Court in Scharff v. Meyer, 133 Mo. 444-445. Again in 4 Am. and Eng. Ency. (2d Ed.), page 512—Bills of Lading: "A carrier issuing a through bill of lading, guaranteeing a certain rate of charges over connecting lines, holds itself out as authorized to contract for them." In the same volume, page 536: "It may, therefore, be stated, as a general rule applicable to bills of lading that, as a contract expressing the terms and conditions upon which the property is to be transferred, a bill of lading is to be regarded as the sole evidence of the final agreement, in

which are merged all prior and contemporaneous agreements of the parties." (2) Under the law and the evidence in this cause, the Vandalia road was the agent of the British Channel line of steamers, and a delivery to the Vandalia road was a delivery to the respondents. On this theory the court, though refusing at first, afterwards admitted the evidence of Mr. Miller, that he, as the secretary of the appellant, tendered one hundred tons of hominy feed to the Vandalia road, or, as in law, to British Channel line of steamers on April 20, and they refused to accept the same though on same day they accepted and gave him a through bill of lading for twenty tons of hominy feed, embraced in the same contract and arising out of the same transaction.

*Abbott & Edwards* for respondents.

(1) The contract required appellants "to ship from seaboard not later than April," and provided that if they 'had "contracted the freight with a regular line having regular advertised sailings, and had delivered the flour to the forwarding agent within the contract time," then they should "be free from all liability arising from delay in transit." The forwarding agent is not the railroad company that is taking the car of freight to the seaboard—it is the agent at the seaboard that is sending it forward on the steamer. (2) St. Louis justices have jurisdiction in all cases where the sum demanded, exclusive of interest and costs, does not exceed $500. The amount claimed and sued for, and not the amount recovered, determines the jurisdiction.

GOODE, J.—Plaintiffs, who were grain merchants in Bristol, England, sued the defendants to recover damages for breach of a contract by which defendants agreed to sell the plaintiffs two hundred tons of hominy feed. This contract

was made by telegrams.   The first was dated March 5, 1898, and is as follows:

"We order 200 tons hominy feed A. at three pounds fifteen shillings, April seaboard."

This order defendants accepted on March 9 by a message in these words:

"We accept your offer, 200 tons hominy feed April."

The sale was confirmed by a message from plaintiff's to defendant on the ninth of March:

"We confirm the sale; shipment from seaboard not later than April."

Also by a letter of the same date, which it is unnecessary to quote as it in no way altered the terms of the contract as made by the telegrams.

It is admitted defendant shipped eighty tons of the hominy in time.   The dispute is over twenty tons shipped from St. Louis on the twentieth day of April, and from the seaboard on the second day of June, and one hundred tons which were never shipped, but were tendered by defendant to an alleged agent of the Steamship Company in St. Louis on the twentieth of April, and refused by him.   A code book containing general regulations in regard to such contracts, contains this clause, which is admitted to have been part of the contract between these parties:

"In case of c. i. f. sales, the miller or shipper having contracted the freight with a regular line having advertised sailings, and having delivered the flour *to the forwarding agent* within the contract time, shall be free from all liability arising from delay in transit."

The action was for damages sustained by plaintiffs on account of the failure of defendant to ship said twenty tons of hominy in time and to ship the remaining one hundred tons at all.

The defense is that defendant performed its contract when it delivered the twenty tons to said agent of the steamship company at St. Louis on the twentieth of April and tendered him the one hundred tons. This supposed agent was one Albert G. Hopkins, who was the agent of the Vandalia railroad line at St. Louis. Whether he was also the agent of the Bristol Steamship Company, by which line the hominy was to be transported to England, is not clear. What we gather from the evidence is, that he was really a freight agent of the Vandalia railway line, at St. Louis, who, when defendant saw him about transporting the grain in question over his railway, to the seaboard, got authority from the Bristol Steamship Company to issue through bills of lading for the freight from St. Louis to Bristol. He says in one part of his testimony that he was not the constituted agent of the steamship company when he contracted with the defendant, and in another place that he was the agent of the Vandalia line and "acted as the intermediary between the Crown Cereal Company and the steamship line" by the latter's authority. The steamship company had two regular sailings a month from Baltimore, which we assume for appellant's benefit, were advertised, as the clause from the code book required them to be.

The contract between plaintiffs and defendant will by no means bear the interpretation which the latter seeks to put on it, namely: that defendant discharged its whole duty by delivering and tendering the hominy to Hopkins in St. Louis, as agent of the steamship company, allowing, for the sake of argument, he was such agent, at any time during the month of April. By the express words of the telegrams which made the contract, the shipment was required to be made from seaboard not later than April. How could this be done if defendant might discharge itself by delivering the goods to Hopkins any time during April? The evidence shows that it took about seven days for the freight to reach the seaboard.

If it was shipped from here later than the twenty-third of April, it could not possibly be reshipped from the seaboard during that month, as the contract stipulated.

The only reasonable interpretation of the whole agreement, including the clause imported into it from the code book and the stipulation for shipment not later than April, is that defendant was bound to get the hominy to port in time for it to be shipped from there during that month; otherwise one clause of the contract would be nullified by the other. The forwarding agent referred to, must be construed in this case, to mean an agent at the port of shipment; and it was necessary to have the merchandise in his hands in time for him to get it aboard some vessel sailing in April. The lower court took that view and we think it was right. Defendant failed to do this as to one hundred tons of the two hundred which it agreed to sell. It is suggested by way of excuse, that the Spanish war caused so many steamers to be taken out of the merchant marine service that defendant could not get one to carry the stuff. But the testimony shows the only reason the twenty tons were not shipped from port during April, was that they reached there after the last sailing for the month, and the other one hundred tons were declined by the steamship company because they were tendered afterwards. Defendant had to get the hominy to seaboard in time for the last sailing in April of any of said steamship company's vessels; otherwise it would necessarily be in default. It failed in that respect and must answer for the resultant damages.

Justices of the peace in St. Louis have jurisdiction over controversies of this kind, where the amount involved, exclusive of interest and costs, does not exceed five hundred dollars. The amount sued for was less than five hundred dollars, and while the judgment was slightly in excess of that sum on account of including interest from the date of the

demand, this did not, of course, take the case out of the
justice's jurisdiction.

The defendant was clearly liable and the judgment is
affirmed.   All concur.